16261

SCHRADER v. MONARCH MILLS *ET AL.*

(55 S. E. (2d) 285)

*Messrs. Osborne, Butler & Moore,* of Spartanburg, *for Appellants,*

*Messrs. J. F. McLure* and *John D. Long,* of Union, *for Respondent,* 

September 12, 1949.

TAYLOR, Justice.

The respondent, Paul Schrader, contends that on April 27, 1947, while employed by the appellant, Monarch Mills, he suffered an injury, which arose out of and in the course of his employment, by reason of being bitten by a black widow spider, and that this injury resulted in serious disability and disfigurement.

Claim was duly filed with the South Carolina Industrial Commission, and a hearing held thereon resulted in an opinion and award in favor of claimant, dated December 23, 1947. Appellants made application for a review by the entire Commission, which in a majority opinion, adopted the opinion and award of the Hearing Commissioner. In due course, appellants appealed to the Court of Common Pleas for Union County, the matter being heard by the Honorable T. B. Greneker, who filed an order dated February 4, 1949, overruling all exceptions, and appellants now come to this Court upon exceptions which raise the one question of whether or not there was evidence from which a reasonable inference could be drawn that respondent's injuries arose out of his employment.

"In reviewing this case on appeal, this Court is of course cognizant of the well-founded rule of law that the Industrial Commission being the fact-finding body and this Court and the Circuit Court both being appellate Courts in workmen's compensation matters, this and the Circuit Courts can only review the facts to determine whether or not there is any competent evidence to support the findings of the fact-finding body. If there is, the Courts are without power to pass upon the force and effect of such evidence. An award may of course be reversed if there is an absence of any competent evidence to support it, but in Workmen's Compensation cases the Courts are not the triers of facts. If the facts proved are capable as a matter of law of sustaining the inference of fact drawn from them by the Industrial Commission, its findings are conclusive in the absence of fraud and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. *Anderson v. Campbell Tile Co.,* 202 S. C. 54, 24 S. E. (2d) 104; *Crawford et al. v. Town of Winnsboro et al.,* 205 S. C. 72, 30 S. E. (2d) 841; *Lanford v. Clinton Cotton Mills,* 204 S. C. 423, 30 S. E. (2d) 36; *Strawhorn v. J. A. Chapman Const. Co.,* 202 S. C. 43, 24 S. E. (2d) 116; *Cokeley v. Robert Lee, Inc.,* 197 S. C. 157, 14 S. E. (2d) 889; *Shehane v. Springs Cotton Mills,* 206 S. C. 334, 34 S. E. (2d) 180; *Green v. Grinnell Co.,* 213 S. C. 116, 48 S. E. (2d) 644; *White v. Carolina Light & Power Co.,* S. C., 53 S. E. (2d) 872; *Buff v. Columbia Baking Co. et al.,* S. C., 53 S. E. (2d) 879."

An injury arises in the course of employment within the meaning of the Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.,* when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto. An accident arises out of the employment when it arises because of it, as when the employment is a contributing proximate cause. These conditions must con-

cur before the act can apply. *Johnson v. Merchant's Fertilizer Co. et al.,* 198 S. C. 373, 17 S. E. (2d) 695.

Claimant testified that on the date in question he was employed by the Monarch Mills Co. at their Lockhart plant, and a portion of his testimony appears as follows:

"Q. What time did you go to work that night, Mr. Schrader? A. Twelve o'clock.

"Q. Now tell the Commissioner what happened after you went to work that night. A. Well, during the night I had taken a dose of medicine and I had been in the water-house some two or three different times.

"Q. What kind of medicine had you taken? A. Took a dose of Black Draught. And the last time—not the last time I was in there, either, but the last time I had an action, and after that I felt a stinging like something bit me, and I went back in there and looked—

"Q. Where was that stinging that you felt? A. On my penis. I went back in there and looked, and there was a little whelp about so long (indicating) and about as big as a match stem.

"Q. On your penis? A. Yes, sir.

"Q. What took place after that? A. In about thirty or forty minutes, something like that, I began to get sick on the stomach and vomited two or three different times. I thought I would work until eight o'clock, and about ten or fifteen minutes to seven I went and told my second hand I was sick and had to go home, couldn't make it no longer.

"Q. Who was your second hand? A. Arthur Crocker. I had my car down back of the mill and I went down there and I vomit a good long while there. I drove on to the house, and when I opened the door to get out I got sick again and I was sick there ten minutes. Finally I got in the house and went to bed, and I don't remember much of that day.

"Q. Mr. Schrader, when you got to the house and before you went to bed did you look at your penis? A. Yes, sir.

"Q. What condition was it in there? A. It was swollen some more than it was when I left the mill.

"Q. Then what happened? A. It just kept on swelling and hurting, and that evening my wife called the doctor and he came up there.

\* \* \*

"Q. Mr. Schrader, have you ever noticed any spider webs in the water-house? A. Yes, sir.

"Q. That water-house is maintained by the mill for the employees, isn't it? A. Yes, sir."

A portion of the medical testimony of Dr. Harold Hope appears as follows:

"Q. Doctor, the condition you saw him in when he left the hospital could easily affect his physical ability to perform the sexual act? A. Yes, sir.

"The Court: I would like to see the man, and let Dr. Hope and Dr. Harden see it and describe it for the record.

"(Claimant removes his clothing over affected parts.)

"The Witness: It would be my opinion here now that there is approximately—the only thing I see now is approximately one-half, the organ proper is approximately one-half the length it was, with scar tissue all the way around that could be tender to the touch.

"The Court: And is it a bodily disfigurement or not? The Witness: I would say yes.

"Q. Doctor, it has formed new skin over there now? A. It has formed more than I anticipated.

"Q. In view of the fact it has formed in this period of time more than you anticipated, would it be reasonable to expect that it would form more as time goes on? A. No, the scar is permanent there.

"Q. It is completely covered over with new skin? A. No, there is one area that is scar tissue, not skin.

"Q. The fascia, the underlying tissue, is not exposed; it has skin over it? A. One area is covered by scar tissue, which is not skin."

There is no direct testimony that a black widow spider was seen, but the doctor gave the opinion that claimant was bitten by such a spider; and another witness testified that the place was infested with spiders and that he saw a black spider jump into the face of another employee but was knocked away before any damage was done. Another witness testified that he is familiar with the water-house and that he has seen many spiders and webs there.

Appellants contend that there is no evidence to show that claimant was bitten by the spider during the course of his employment and that such conclusion is based on surmise and conjecture, but it is uncontradicted that claimant was at work about three hours before he noticed the stinging and burning sensation which was a few minutes after a visit to the water-house and his condition became rapidly worse, so much so that he was forced to leave his work and only got home with considerable difficulty. No one actually saw the spider but it is not disputed that claimant was suffering from such a bite.

A colored woman was employed to keep the water-house clean between the first and second shifts, but none was so employed for the third shift, the one on which claimant worked. Therefore, when the cleaning was completed on Saturday mornings, there would be no cleaning on Sundays until the time at which claimant resumed his work on the third shift on Sunday night at 12 P. M.

Respondent testified that, between 11 and 12 o'clock that night, he had bathed and dressed completely in freshly laundered clothes, walked from his home to his car immediately in front of the house, and drove to his place of employment, which means that approximately four hours elapsed between the time he put on fresh clothes until he noticed the stinging sensation. When this is considered in connection with other testimony that the water-house was heavily infested with spiders and that respondent's condition developed rapidly after the first symptoms, there is some evidence which the Commission could consider in determin-

ing whether or not respondent was bitten in the course of his employment. It is well settled that circumstantial evidence may be relied upon to settle questions of fact in Workmen's Compensation matters as well as in other cases. Horovitz on Workmen's Compensation 151; *Ferguson v. State Highway Department,* 197 S. C. 520, 15 S. E. (2d) 775; *Holly v. Spartan Grain & Mill Co.,* 210 S. C. 183, 42 S. E. (2d) 59; *Buff v. Columbia Baking Co., supra;* 71 C. J. 1085-86.

This Court is of the opinion that there is sufficient evidence for the Commissioner's finding that claimant received an injury which arose out of and in the course of his employment, and that the order of the Circuit Court should be affirmed, and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES, and OXNER, JJ., concur.