24462

Marvin STEPHENSON, Jr., Employee, Respondent v. RICE SERVICES, INC., Employer, and American Policyholders Insurance Company, Carrier, Petitioners.

(473 S.E. (2d) 699)

Supreme Court

*Lana H. Sims, Jr.* and *Andrew F. Lindemann,* both of *Ellis, Lawhorne, Davidson & Sims, P.A.,* Columbia, *for Petitioners.*

*James E. Chaffin, Jr.,* Columbia, *for Respondent.*

Heard June 4, 1996.

Decided July 8, 1996; Reh. Den. Aug. 22, 1996.

Toal, Justice:

We granted certiorari to review the Court of Appeals' decision holding that Marvin Stephenson is entitled to workers' compensation benefits because of a work-related injury. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Marvin Stephenson, a Vietnam Veteran suffering from chronic Post Traumatic Stress Disorder ("PTSD"), worked for Rice Services ("Employer") as a supervisor in an army mess hall. He had a second job pumping gas and sweeping at a local gas station. Before he had these jobs, he worked sporadically and was hospitalized intermittently for his PTSD. His counseling psychologist and vocational rehabilitation psychologist at the Veterans Administration ("VA") both recorded in their notes that Stephenson was "unemployable." Employees at the VA Hospital also characterized his employment prognosis as quite poor.

On March 16, 1988, while working for Employer, Stephenson sustained a work-related injury to his back. At the time of this injury, his VA disability rating was 30%, although later the rating was adjusted retroactively at 100%. After the in-

jury, Stephenson was unable to perform any kind of work. Stephenson filed a Form 50 seeking workers' compensation for aggravation of his PTSD resulting from the work-related injury.

The hearing commissioner for the Workers' Compensation Commission ("Commission") awarded Stephenson total disability benefits for his PTSD. On appeal, an appellate panel of the Commission reversed, holding Stephenson's work-related injury did not aggravate his PTSD. In so holding, the appellate panel relied on the 100% disability rating by the VA and the psychological opinion evidence that Stephenson was "unemployable" prior to and at the time of the accident. The circuit court affirmed.

The Court of Appeals reversed, 314 S.C. 287, 442 S.E. (2d) 627 (Ct. App. 1994), finding the Commission impermissibly relied on the VA disability rating and the medical evidence to find Stephenson "totally disabled" before the accident. Relying on *Outlaw v. Johnson Service Co.*, 254 S.C. 486, 176 S.E. (2d) 152 (1970), the Court of Appeals held a finding of total disability was to be determined by reference to *earning* capacity, rather than to any degree of physical or emotional incapacity. The court reasoned that because Stephenson was actually earning money before his injury, he clearly could not have been totally disabled prior to his injury. The Court of Appeals also found the Commission should not have relied on the disability rating by the Veterans Administration.

This Court granted Employer's petition for a writ of certiorari.

## LAW/ANALYSIS

Employer contends the Court of Appeals erred in finding that Stephenson's work-related injury "aggravated" his pre-existing PTSD, rendering him totally disabled. Given the unusual facts of this case, we agree and hold there existed substantial evidence from which the commission could have concluded that Stephenson's work-related injury did not aggravate his preexisting PTSD. *See Hamm v. South Carolina Public Service Comm'n*, 309 S.C. 295, 422 S.E. (2d) 118 (1992) (under Administrative Procedures Act, court must sustain agency decision if there is substantial evidence to support the decision).

## A. *Introduction*

Like that of most other states, South Carolina's workers' compensation law represents a combination of two competing models of workers' compensation, one economic and the other medical. Under the older, more traditional theory, the goal of workers' compensation is to compensate workers for reductions in their earning power caused by work-related injuries or accidents:

> Workers' compensation in its origins had a well-understood function: it was to provide support for industrially-disabled workers during periods of actual disability, and for their dependents in the event of occupationally-related death, together with hospital, medical and funeral expenses.

1C Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 57.14, at 10-69 (1995) ("Larson"). This older theory ties the concept of disability to wage loss and to loss of earning power, rather than to medical impairment. *See* 1C Larson § 57.14(a) ("[I]t is more useful to use a two-way division, turning on whether the essence of what is being compensated for is medical or economic. Under this division, the first two theories may be combined under the name of the 'earning impairment theory,' in contrast to the 'physical impairment theory.' ").

The definition of disability in South Carolina's workers' compensation statute clearly stems from the earning impairment model of workers' compensation. S.C. Code Ann. § 42-1-120 (1985) (emphasis added) states: "The term *'disability'* means incapacity because of injury *to earn the wages* which the employee was receiving at the time of injury in the same or any other employment." *See also Outlaw v. Johnson Serv. Co.*, 254 S.C. 486, 176 S.E. (2d) 152 (1970) (loss of earning capacity alone is the criterion for compensation under the Act and medical opinion as to the extent of physical disability can have no probative value against actual earnings); *Wynn v. Peoples Natural Gas Co.*, 238 S.C. 1, 118 S.E. (2d) 812 (1961) (criterion of an injured employee's right to compensation is whether employee's injury lessened his earning capacity and deprived him wholly or partially of the power to obtain employment).

Notwithstanding the definition of disability in section 42-1-120, South Carolina's workers' compensation law also recognizes a competing concept of disability that is tied to medical impairment rather than to wage loss or to any reduction in earning capacity. The schedule injuries, which typically provide for fixed awards of workers' compensation based on degrees of medical impairment to certain listed body parts, are compensable without regard to whether the employee is able to continue working at the same job. In other words, with schedule injuries, the fact the employee still is able to work constitutes no bar to compensation. *See, e.g., Dunmore v. Brooks Veneer Co.*, 248 S.C. 326, 149 S.E. (2d) 766 (1966) (with schedule injuries, compensation depends upon the character of the injury rather than on loss of earnings); *G.E. Moore Co. v. Walker*, 232 S.C. 320, 102 S.E. (2d) 106 (1958) (compensation for loss of a member or the loss of the use of a member under [schedule section] is not dependent on actual wage loss, and the fact that the claimant after his injury is regularly employed at greater earnings than before is immaterial).

### B. *Total Disability*

Like the concept of disability generally, the concept of total disability has been influenced both by the medical model and by the earning capacity model. There are two situations in which the Commission can find a claimant totally disabled. First, for certain conditions resulting from work-related injuries, a claimant is *deemed* totally disabled and need not demonstrate loss of earning capacity to recover workers' compensation benefits. *See, e.g.,* S.C. Code Ann § 42-9-10 (Supp. 1994) (classifying loss of certain limbs and body parts as total disability as a matter of law; classifying as total disability paraplegia, quadriplegia, and physical brain damage resulting from compensable injuries); *see also* S.C. Code Ann. § 42-9-30 (1985) (where compensable injury results in 50% or more loss of use of the back, person deemed totally disabled); *Lyles v. Quantum Chemical Co.*, 315 S.C. 440, 434 S.E. (2d) 292 (Ct. App. 1993) (recovery for total disability allowed where statute specifically provided particular injury constitutes total disability, notwithstanding claimant's contin-

ued earning capacity), *cert. denied* (1994).[1] Under the circumstances in which a worker is *deemed* totally disabled, the medical model of workers' compensation predominates.

In contrast, the earning impairment model predominates when a worker is not statutorily *deemed* totally disabled. Under this model, the Commission may predicate a finding of total disability on the claimant's complete loss of earning capacity as a result of a work-related injury. *See* S.C. Code Ann. § 42-1-120 (1985) ("The term *'disability'* means incapacity because of injury to earn the wages which the employee was receiving at time of injury in the same or any other employment."); S.C. Code Ann. § 42-9-10 (Supp. 1994) ("When the incapacity for work resulting from an injury is total, the employer shall pay . . . to the injured employee during the total disability. . . ."); *Wynn v. Peoples Natural Gas Co.*, 238 S.C. 1, 118 S.E. (2d) 812 (1961). Employees who because of a work-related injury can perform only limited tasks for which no reasonably stable market exists are considered totally disabled notwithstanding their nominal earning capacity. 1C Larson, *supra*, § 57.51(a), at 10-286 (1995); *see also Coleman v. Quality Concrete Prods.*, 245 S.C. 625, 142 S.E. (2d) 43 (1965) (total disability is "inability to perform services other than those that are so limited in quality, dependability, or quantity that no reasonably stable market for them exists") (citations omitted).[2]

---

[1] Even after being adjudged totally disabled, many employees receiving benefits under one of the specific statutory presumptions of total disability continue to work either in the same or in a different field. An employer may not refuse to pay the total disability benefits simply because the employee retains earning capacity after the accident. *See, e.g., Lyles, supra.*

[2] We note as an aside that a person formerly adjudged totally disabled is not necessarily precluded from compensation for subsequent work-related injuries. For example, a person who becomes a paraplegic as a result of a work-related accident may recover for permanent and total disability under section 42-9-10. Nevertheless, the paraplegic may continue to work. If she suffers an *additional* work-related injury that either is a schedule injury (distinct from he paraplegia) or that deprives her of earning capacity, she may recover workers' compensation for that injury, notwithstanding the previous determination and award of total disability.

However, an employee who has been adjudged totally disabled with respect to some particular body part cannot receive additional compensation for further injuries to that particular body part. *See Medlin v. Greenville County*, 303 S.C. 484, 401 S.E. (2d) 667 (1991). The rationale underlying this rule is that the person already has received compensation for the total loss of use of that particular body part, so additional compensation for loss of use would create a windfall. *Id.*

## C. *Aggravation of Stephenson's Disability*

Because Post Traumatic Stress Disorder is not tied to the medical model of South Carolina workers' compensation law, any worker's compensation payable for that condition depends entirely on a reduction in the claimant's earning capacity. Therefore, if Stephenson is to recover for aggravation of his PTSD, he must show that the work-related injury he suffered exacerbated his condition and thus reduced his earning capacity. Employer contends that even before his work-related injury, Stephenson had no earning capacity and was, therefore, already totally disabled for purposes of workers' compensation. Under workers' compensation law, "aggravation" of preexisting PTSD would have to refer to events causing a further reduction in earning capacity. In essence, Employer argues that because Stephenson had no earning capacity and thus was totally disabled before the accident, the work-related injury could not have "aggravated" his PTSD.

Having reached this point in the analysis, the Court of Appeals simply concluded that Stephenson could not have been totally disabled before his work-related injury because he was working and therefore *necessarily* retained some earning capacity notwithstanding his PTSD. The Court of Appeals found the psychological evidence irrelevant to the question of Stephenson's earning capacity.

In response to the Court of Appeals' conclusion, Employer argues that although *earning capacity* may be the sole measure for determining the extent of Stephenson's disability both before and after his work-related injury, the mere fact of employment is not always indicative of earning capacity. Employer suggests that if the work that a claimant is capable of performing or is performing is "so limited in quality, dependability, or quantity that no reasonably stable market exists" for that kind of work, then the employee should be considered totally disabled. *See Coleman v. Quality Concrete Prods., Inc.,* 245 S.C. 625, 629, 142 S.E. (2d) 43, 44 (1965) (giving definition of "total disability"). Employer submits that under this standard there was substantial evidence that even though Stephenson was employed, the settings in which he was capable of working were so limited that even before his work-related accident, he was totally disabled for purposes of workers' compensation. Therefore, the accident could

not have "aggravated" his disability.

We agree with Employer. The Court of Appeals' analysis does not take into account the substantial evidence in the Record indicating that the work Stephenson was capable of performing was so limited in quality, dependability, or quantity that no reasonably stable market existed for his skills. Specifically, one psychologist testified that Stephenson's niche within the labor market was extremely narrow: Stephenson could function only within certain civilian jobs in a military setting. The Commission also relied on statements by several psychologists and on hospital records indicating Stephenson was basically unemployable even prior to his accident and was incapable of holding jobs for any length of time. The Commission specifically noted that when the accident occurred, Stephenson had been employed at Rice Services for only a few months.[3] Although conflicting evidence was presented, there was certainly substantial evidence to support the Commission's decision. *See Palmetto Alliance, Inc. v. South Carolina Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E. (2d) 695, 696 (1984) (The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an Administrative Agency's finding from being supported by substantial evidence.").

The Court of Appeals' reliance on *Outlaw v. Johnson Service Co.*, 254 S.C. 486, 176 S.E. (2d) 152 (1970), is misplaced. In *Outlaw*, the plaintiff, who had been injured in a work-related accident, attempted to recover workers' compensation based on a physician's finding that the plaintiff was 30% disabled. However, the employee still was working at the same job with the same pay after the accident. This Court held that in a general (as opposed to schedule) disability case, the extent of disability must be measured by earning capacity rather than by degree of medical impairment. Unlike this case, *Outlaw* did not concern the question whether the work that the claimant could do was so limited in quality, dependability, or quantity

---

[3] The Commission also relied on Stephenson's VA 100% disability rating. As the Court of Appeals pointed out, this was improper. *See Solomon v. W.B. Easton, Inc.*, 307 S.C. 518, 521, 415 S.E. (2d) 841, 843 (Ct. App. 1992) (disability rating by Social Security Administration likely not admissible in workers' compensation action). However, even without the VA rating, there is substantial evidence to support the Commission's decision. *See infra.*

that no reasonably stable market existed for his skills. Moreover, the medical evidence here goes directly to the issue of employability, unlike that in *Outlaw*. In fact, one of the medical experts specialized in vocational psychology and, therefore, his opinion was directly relevant to the issue whether Stephenson was capable of sustained, continuous employment prior to his accident.

## CONCLUSION

The Record contains substantial evidence to support the Commission's conclusion that Stephenson's work-related injury did not aggravate his preexisting Post-Traumatic Stress Disorder. Accordingly, the decision of the Court of Appeals is REVERSED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.