562 S.E.2d 476

**Raymond O. SIMMONS, Respondent,**

v.

**CITY OF CHARLESTON and Sedgwick of the Carolinas, Inc., Appellants.**

No. 3446.

Court of Appeals of South Carolina.

Heard Dec. 5, 2001.

Decided Feb. 19, 2002.

Rehearing Denied May 6, 2002.

Certiorari Dismissed Aug. 7, 2002.

66

William B. Regan and Carl W. Stent, both of Regan, Cantwell & Stent, of Charleston, for appellants.

A. Elliott Barrow, Jr., of Charleston, for respondent.

PER CURIAM:

Raymond Simmons, a captain with the City of Charleston Fire Department, sustained a brown recluse spider bite to his right leg while preparing to respond to a fire call. Simmons suffered from various medical conditions which, combined with the spider bite, required the amputation of his left leg. Simmons filed a workers' compensation claim. The single com-

missioner granted Simmons total disability under the general disability statute. The full commission and circuit court affirmed. The City of Charleston and Sedgwick of the Carolinas, Inc. (collectively "the City") appeal. We affirm.

## FACTS/PROCEDURAL HISTORY

Simmons worked as a firefighter for the City of Charleston for twenty-five years, attaining the rank of captain. On August 24, 1995, Simmons's firefighting unit received a call to respond to the Holiday Inn. When Simmons placed his fireman's boots on, a brown recluse spider bit his right leg. Over a period of several days, the wound inflicted by the spider worsened and Simmons sought treatment from his regular physician. Simmons's physician referred him to Dr. Robert Cathcart, a surgeon.

After examining the wound, Dr. Cathcart advised Simmons to remain out of work. Simmons, a chronic sufferer of diabetes and hypertension, had poor circulation to his extremities, which hampered his recovery. Dr. Cathcart attempted three skin graft surgeries. The first two attempts failed, in part, due to Simmons's diabetic condition. Finally, the third surgery, accompanied by hyperbaric therapy, was successful.

Simmons also suffered from poor peripheral nerve function in his extremities, resulting in a decreased ability to sense pain. Simmons, a large man, favored his right leg and put increased weight and pressure on his left leg during his lengthy recovery. The pressure on his left leg resulted in blisters, which Simmons did not realize were developing. The blisters burst and became infected. Dr. Cathcart could not stem the infection and eventually amputated Simmons's left leg below the knee. Dr. Cathcart assigned a 100 percent disability to Simmons's left leg.

Simmons filed a claim for workers' compensation. The City denied his claim. The single commissioner held a hearing on March 5, 1999. At the time, Simmons was fifty-eight years old.

The commissioner admitted the "Employability Evaluation" of Jean R. Hutchinson, a vocational consultant. Hutchinson opined Simmons suffered a substantial impairment to his earning capacity due to the injury, his age, and his ninth grade

education level. The single commissioner found Simmons totally and permanently disabled, and entitled to receive compensation for five hundred weeks. The commissioner also awarded payment for reasonable and necessary medical, prosthetic, and other related services throughout Simmons's lifetime. The full commission and the circuit court affirmed. The City appeals, raising four issues.

## ISSUES

I. Whether the circuit court erred by holding that the City's failure to appeal the strike of the City's Form 58 prevented the City from arguing a "greater risk" defense.

II. Whether the circuit court erred by not recognizing that South Carolina requires an employee to demonstrate a "greater risk" of an injury from a spider bite than the general public's risk.

III. Whether the circuit court erred by not requiring Simmons to support his claim of total and permanent disability under the general disability statute with medical testimony.

IV. Whether the circuit court erred by not limiting Simmons's recovery to the scheduled loss when the only assigned impairment rating was to a scheduled member and there was no evidence of injury to an unscheduled member.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 134-35, 276 S.E.2d 304, 306 (1981). In an appeal from the commission, this court may not substitute its judgment for that of the commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. S.C.Code Ann. § 1-23-380(A)(6)(Supp.2000). Our review is limited to deciding whether the commission's decision is supported by substantial evidence. *See Lockridge v. Santens of Am., Inc.*, 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001) (stating appellate re-

view of the commission's factual findings is governed by the substantial evidence standard). Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached. *Id.*, 544 S.E.2d at 844.

## LAW/ANALYSIS

### I.

The City argues the circuit court erred in holding its failure to appeal the striking of the Form 58 prevented it from raising its "greater risk" or "increased risk" defense first advanced in its Form 58. The City filed its Form 58 less than ten days prior to the date of the hearing, in violation of 25A S.C.Code Ann. Regs. 67–611(B)(1) (Supp.2000). Accordingly, the single commissioner struck the Form 58.

The commissioner, however, alternatively ruled on the "greater risk" argument and concluded the doctrine did not apply to spider bites. In its appeals to the commission and the circuit court, the City did not address the striking of the Form 58 but did raise the "greater risk" argument. The commission "considered all issues raised in the briefs" and affirmed the single commissioner. The circuit court concluded that because the City failed to appeal the striking of the Form 58, the commission's ruling was the law of the case. However, the court alternatively addressed the arguments raised by the City in the Form 58, including the "greater risk" argument, and found it "not the law of the State of South Carolina and . . . not an adequate defense."

■ Because the commissioner, the commission, and the circuit court considered the merits of the City's "greater risk" defense and found the defense inadequate, we need not determine if the circuit court erred in finding the City waived the argument by failing to appeal the commissioner's ruling on the Form 58. We agree the City fails to demonstrate a right to relief based on the merits of its "greater risk" defense.

### II.

The City argues Simmons must prove he was exposed to a greater risk of a spider bite than the general public and his

failure to do so precludes him from compensation under the Workers' Compensation Act. We disagree.

Entitlement to compensation under the South Carolina Workers' Compensation Act requires a claimant to suffer an injury by accident arising out of and in the course of employment. S.C.Code Ann. § 42–1–160 (Supp.2000). There are three lines of interpretation of the term "arising" currently in use: 1) the increased-risk doctrine; 2) the positional-risk doctrine; and 3) the actual-risk doctrine. 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 3.01 (2001) ("Larson").[1]

The increased-risk doctrine is the prevalent doctrine in the United States. *Id.* at § 3.03. Under this doctrine, an injury arises out of the employment if some risk inherent to the employment was a contributing cause of the injury. The risk must be one to which the general public would not be equally exposed. *Roberts v. Burlington Indus., Inc.*, 321 N.C. 350, 364 S.E.2d 417, 422–23 (1988). The employment must increase the risk of the injury. *Id.* at 423.

A growing number of courts have adopted the positional-risk doctrine. 1 Larson § 3.05. Under this doctrine, "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." *Id.*

The actual-risk doctrine ignores whether the risk is common to the public and focuses on whether it is a risk of the particular employment. 1 Larson § 3.04. "It is a more defensible rule than the [increased-risk rule], since there is no real statutory basis for insisting upon a peculiar or increased risk, as long as the employment subjected claimant to the actual risk that caused the injury." *Id.*

The City argues spider bites should be subjected to the increased-risk doctrine. South Carolina has applied the increased-risk doctrine to cases of exposure to climatic conditions. In *Hiers v. Brunson Construction Co.*, 221 S.C. 212, 70 S.E.2d 211 (1952), the claimant, a carpenter and a supervisor

---

1. There are two other obsolete lines of interpretation: the peculiar-risk doctrine and the proximate cause doctrine. 1 Larson § 3.01.

of construction sites, worked one day while suffering from a cold and several days later died from pneumonia-induced complications. His estate argued that his exposure to harsh weather conditions while on the job exacerbated his condition and contributed to his death. The court stated:

> The test as to whether the injury or death arose out of or in the course of employment when caused or hastened by atmospheric conditions, is whether, under all the circumstances, the employee was exposed to a greater risk by reason of his employment and duties than was imposed upon an ordinary member of the public.

*Hiers*, 221 S.C. at 230, 70 S.E.2d at 219. In affirming the award of benefits, the court further stated: "Where the work and the method of doing the work exposes [sic] the employee to the forces of nature to a greater extent than he would be if not so engaged, the industry increases the danger from such forces, and the employer is liable." *Id.* at 232, 70 S.E.2d at 220.

South Carolina, although not formally adopting or rejecting any of these doctrines, has not applied the increased-risk doctrine in determining the compensability of injuries due to spider bites and bee stings. In *Schrader v. Monarch Mills*, 215 S.C. 357, 55 S.E.2d 285 (1949), the claimant was bitten by a black widow spider while on a bathroom break at work. The court stated: "An injury arises in the course of employment . . . when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." *Id.* at 360, 55 S.E.2d at 287. The court did not address whether a claimant needs to prove that he was at a greater risk of spider bites than the general public. The court affirmed the award of benefits to claimant, finding that the spider bite took place while he was acting within the scope of his employment. *Schrader*, 215 S.C. at 364, 55 S.E.2d at 288. *See also Eagles v. Golden Cove, Inc.*, 260 S.C. 113, 116, 194 S.E.2d 397, 398 (1973) (finding a bee sting suffered while cutting grass arose out of and in the course of employment).

 An accident arises out of employment when the employment is a contributing proximate cause of the accident.

*Lee v. Wentworth Mfg. Co.,* 240 S.C. 165, 168, 125 S.E.2d 7, 9 (1962). "To be entitled to compensation, an employee need not necessarily be engaged at the time of injury in the actual performance of his work; it is sufficient if he is upon the employer's premises, 'occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment.'" *Id.* (quoting *McCoy v. Easley Cotton Mills,* 218 S.C. 350, 356, 62 S.E.2d 772, 774 (1950)).

■ Under *Schrader,* we find Simmons is entitled to an award of benefits. The spider bite occurred while Simmons was employed, at a place where he reasonably needed to be in the performance of his duties, and while he was fulfilling those duties or engaged in doing something incidental thereto. Clearly, the nature of his job as a firefighter required Simmons to wear fireman's boots. Placing those boots on his feet fulfilled a task incidental to his employment. Under *Schrader,* Simmons satisfied the requirements necessary to recover for an injury caused by a spider bite.

### III.

The City next argues that Simmons must offer medical evidence demonstrating he is disabled in order to recover for total disability under S.C.Code Ann. § 42–9–10 (Supp.2000). We disagree.

■ "South Carolina's workers' compensation law represents a combination of two competing models of workers' compensation, one economic and the other medical." *Stephenson v. Rice Servs., Inc.,* 323 S.C. 113, 116, 473 S.E.2d 699, 700 (1996). Under the more traditional economic theory, the goal of worker's compensation law is to compensate workers for reductions in their earning capacity caused by work-related injuries. *Id.* This is the criterion for compensation under the Workers' Compensation Act. *See* S.C.Code Ann. § 42–1–120 (1985) ("The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.").

Notwithstanding the definition of disability in section 42–1–120, South Carolina's workers' compensation law also recognizes a competing concept of disability that is tied to medical impairment rather than to wage loss or to any

reduction in earning capacity. The schedule injuries, which typically provide for fixed awards of workers' compensation based on degrees of medical impairment to certain listed body parts, are compensable without regard to whether the employee is able to continue working at the same job. In other words, with schedule injuries, the fact the employee still is able to work constitutes no bar to compensation.

*Stephenson,* 323 S.C. at 117, 473 S.E.2d at 701. Under the medical theory, the focus is on the medical impairment of the employee. *Id.*

 When an employee is not statutorily deemed totally disabled according to the type of injury suffered, the economic model is generally used to prove total disability. *Id.* at 118, 473 S.E.2d at 702. Under the economic model, "the Commission may predicate a finding of total disability on the claimant's complete loss of earning capacity as a result of a work-related injury." *Id.* The ability to perform limited tasks for which no stable job market exists does not prevent an employee from proving total disability. *Id.*

We do not think a medical doctor's testimony is necessary to prove total disability under the economic model. We are guided by South Carolina cases that have allowed claimants who were similarly situated to recover under the economic theory without the introduction of medical testimony. In *Coleman v. Quality Concrete Products, Inc.,* 245 S.C. 625, 142 S.E.2d 43 (1965), the court allowed a fifty-eight-year-old heavy equipment operator with a sixth grade education to recover relying solely on the claimant's testimony offered to support his lack of earning capacity. Also, in *McCollum v. Singer Co.,* 300 S.C. 103, 386 S.E.2d 471 (Ct.App.1989), the court affirmed the full commission's finding that a fifty-year-old machine operator was totally disabled based on a vocational consultant's averment that the employee was totally disabled.

 Hutchinson, the vocational consultant, testified that Simmons suffered a substantial impairment to his earning capacity and is now unable to compete in the job market. We find the testimony is sufficient under the *Coleman* and *McCollum* cases and conclude Simmons was not required to provide medical evidence of total disability.

## IV.

The City argues also that Simmons cannot recover total disability when his injuries occurred only to a scheduled member of the body. Under the facts of this case, we disagree.

Simmons suffered an amputation of his left leg which led to an assignment of 100 percent impairment of that leg. Testimony was adduced during the hearing showing the right leg, which was the leg bitten by the spider, also continued to suffer injury. This testimony led the Commissioner to find that Simmons suffered swelling and impairment in his right leg.

The City cites *Brown v. Owen Steel Co.*, 316 S.C. 278, 450 S.E.2d 57 (Ct.App.1994) to support its argument that the injury to the scheduled member must also cause injury to an unscheduled member to recover under the economic model. Brown suffered a thirty-five percent permanent partial disability to the back. The commission awarded Brown disability to the back under the scheduled member Section 42–9–30 of the South Carolina Code. *See* S.C.Code Ann. § 42–9–30 (1985 & Supp.2000). Brown argued he should have been permitted to seek benefits under the general disability statute § 42–9–20 instead of under § 42–9–30. The Commission and the circuit court both held that if a specific member included in the schedule set forth in § 42–9–30 is implicated, the award must be made pursuant to that section. This court concluded the commission misstated the law:

> Under our Worker's Compensation Act, a claimant may proceed under § 42–9–10 or § 42–9–20 to prove a general disability; *alternatively,* he or she may proceed under § 42–9–30 to prove a loss, or loss of use of, a member, organ, or part of the body for which specific awards are listed in the statute. It is well-settled that an award under the general disability statutes must be predicated upon a showing of a loss of earning capacity, whereas an award under the scheduled loss statute does not require such a showing.

*Brown,* 316 S.C. at 279, 450 S.E.2d at 58 (quoting *Fields v. Owens Corning Fiberglas,* 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990)). *See also Green v. City of Columbia,* 311 S.C. 78, 80 n. 2, 427 S.E.2d 685, 687 n. 2 (Ct.App.1993) (citing *Fields* as holding claimant may proceed under § 42–9–10 or 42–9–20

(general disability) or under § 42–9–30 (scheduled disability) to prove a general disability).

Brown, however, did not argue that his back injury affected other parts of his body or that it had contributed to an impairment beyond the scheduled member. Accordingly, this court, finding Brown showed no prejudice resulting from the commission requiring him to proceed under the scheduled member section, affirmed.

■■■ "The policy behind allowing a claimant to proceed under the general disability § 42–9–10 and § 42–9–20 allows for a claimant whose injury, while falling under the scheduled member section, nevertheless affects other parts of the body and warrants providing the claimant with the opportunity to establish a disability greater than the presumptive disability provided for under the scheduled member section." *Brown*, 316 S.C. at 280, 450 S.E.2d at 58. When a scheduled loss is not accompanied by additional complications affecting another part of the body, the scheduled recovery is exclusive. *Singleton v. Young Lumber Co.*, 236 S.C. 454, 471, 114 S.E.2d 837, 845 (1960) ("Where the injury is confined to the scheduled member, and there is no impairment of any other part of the body because of such injury, the employee is limited to the scheduled compensation....").

■■■ All that is required is that the injury to a scheduled member also affect another body part. Here, Simmons presented evidence his right leg remained swollen and painful as of the date of the hearing before the single commissioner. We agree that substantial evidence supports the commission's finding that Simmons suffered additional complications to another part of the body, other than the amputated left leg, and was thus entitled to proceed under the general disability statute.

## CONCLUSION

Accordingly, for the foregoing reasons, the order on appeal is

**AFFIRMED.**

CURETON, STILWELL and SHULER, JJ., concur.