391 S.C. 38 (2010)
703 S.E.2d 241
Danny R. PILGRIM, Respondent,
v.
Billy EATON and Rufus Revis, and S.C. Workers Compensation Uninsured Employers' Fund, Defendants,
of whom Billy Eaton and Rufus Revis are Appellants, and
S.C. Workers Compensation Uninsured Employers' Fund is also Respondent.
No. 4767.
Court of Appeals of South Carolina.
Heard May 19, 2010.
Decided December 15, 2010.
*40 Thomas Bailey Smith, of Mt. Pleasant, for Appellants.
Amy V. Cofield, of Lexington; Ernest Caskey Trammell, of Anderson, for Respondents.
FEW, C.J.
This appeal presents two questions related to workers' compensation. The first is the factual question of whether Rufus Revis is the statutory employer of the claimant, Danny Pilgrim. The answer to this question determines the jurisdiction of the workers' compensation commission. The second is whether the commission committed an error of law in its method of calculating Pilgrim's average weekly wage. We affirm the commission on the first question, but reverse and remand on the second.

I. Facts and Procedural History
Danny Pilgrim worked for years as a maintenance worker at an apartment complex but lost that job in January, 2005. *41 On January 25, 2005, Pilgrim began working for Sean Kern. Kern had contracted with Billy Eaton to provide carpenters for Eaton's unincorporated business Just Garages Plus. Pilgrim's first job assignment for Kern was to work on the roof of a garage Eaton was building for a customer.[1] On January 28, Pilgrim fell from the roof and seriously injured his back. The commission determined that Pilgrim sustained a work-related injury and awarded him temporary total disability benefits.
The commission found that both Eaton and Rufus Revis were Pilgrim's statutory employers. Revis had been the sole owner and operator of the garage business until selling an interest in it to Eaton in 2002. Revis contends that he sold the entire business to Eaton, and therefore he is insulated from workers' compensation liability. The commission found that Eaton and Revis continued to operate the business together as a "joint effort," and that both are liable to Pilgrim as his statutory employers. Revis appeals this finding. As to the second question, both Eaton and Revis argue the commission erred in its calculation of Pilgrim's average weekly wage. The circuit court affirmed the commission on both issues. We affirm the finding that Revis was Pilgrim's statutory employer. We reverse the determination of average weekly wage, and remand to the commission. On remand, the commission shall calculate Pilgrim's average weekly wage in compliance with section 42-1-40 of the South Carolina Code (Supp.2009), and set the compensation rate for his benefits accordingly.

II. Statutory Employer Determination
The question of whether Revis is Pilgrim's statutory employer is considered "jurisdictional" because its answer determines the jurisdiction of the commission under the Workers' Compensation Act. See Glass v. Dow Chem. Co., 325 S.C. 198, 201-02, 482 S.E.2d 49, 51 (1997). The commission's finding that Revis is a statutory employer means that Pilgrim's claim against him is subject to the exclusivity provision of the Act. See Glass, 325 S.C. at 201, 482 S.E.2d at 50 n. 1.[2] *42 As to these jurisdictional facts, an appellate court must make its own findings according to the preponderance of the evidence after a thorough review of the entire record. Glass, 325 S.C. at 202, 482 S.E.2d at 51.
The parties do not dispute that Just Garages Plus qualifies as Pilgrim's statutory employer under section 42-1-410 of the South Carolina Code (1985). Eaton concedes that he is an owner[3] and operator of the business, and is thus liable for benefits as determined by the commission. We agree with the commission that Revis is also liable to Pilgrim. We find that Revis remained an owner and operator of Just Garages Plus at least until the time of Pilgrim's injury, and is therefore jointly liable with Eaton to Pilgrim as his statutory employer.
Revis was the sole owner and operator of Just Garages until 2002 when he sold an interest in the business to Eaton, and the name was changed to Just Garages Plus. Because Revis was a licensed contractor, and Eaton was not licensed, Revis was required to stay involved in the business. South Carolina law requires that contracting work, such as the work performed by Just Garages Plus, be performed only by licensed contractors. S.C.Code Ann. § 40-11-30 (2001). A person who is not a licensed contractor may not even obtain a building permit for such work. See S.C.Code Ann. § 40-11-370(A)(B) (2001 & Supp.2009). It would have been unlawful for any person other than Revis to do the work of Just Garages Plus. S.C.Code Ann. § 40-11-370(B) (Supp.2009) ("It is unlawful to engage in construction under a name other than the exact name which appears on the license issued pursuant to this chapter."). Therefore, in order for the business to *43 function after Eaton became involved, Revis had to continue to act as the general contractor.
Moreover, Revis's financial interest in the sale to Eaton was the monthly installment payments he received from Eaton. Eaton was unable to make those payments without income from jobs for which Revis acted as the contractor and obtained the required permits. Thus, both Revis and Eaton depended on Revis's integral participation in the work of Just Garages Plus. Further, at least as late as April 2, 2003, Revis admitted he still operated the business. On that date, he signed an agreement with the commission under the name "Rufus Revis d/b/a Just Garages, Respondent." The agreement states "from June 22, 2002 . . ., the Respondent was operating and continues to operate . . . ." Finally, when Revis eventually quit obtaining building permits for Just Garages Plus, Eaton stopped building garages.
Eaton, doing business as Just Garages Plus, contracted to build a garage in January, 2005. The building permit required for the job bears the name "Rufus Revis" as "Contractor." While there is some uncertainty about whether Revis actually obtained this particular permit, we find that he did.[4] Revis was therefore the general contractor for the job. S.C.Code Ann. §§ 40-11-30, 40-11-20(8)-(9) (2001). On January 28, 2005, Pilgrim fell from the roof of the garage and was injured. As the general contractor and the only person allowed under the law to "engage in construction" on that job, Revis was doing business as Just Garages Plus. We affirm the commission's decision that Revis was Pilgrim's statutory employer.
Our holding in this case has no impact on the liability of a seller of a business for workers' compensation benefits owed to employees of the business injured after the sale. On these unique facts, we hold that Revis did not sell the business. Rather, he remained one of its owners and operators. Just *44 like Eaton, Revis was acting in his individual capacity, doing business as Just Garages Plus.

III. Average Weekly Wage Calculation
In making its award of temporary total disability benefits to Pilgrim, the commission set a compensation rate based on its calculation that Pilgrim's average weekly wage was $720. Eaton and Pilgrim appeal this calculation. As to this calculation, an appellate court may not reverse the commission's decision unless substantial rights of the appellant have been prejudiced because the decision is affected by an error of law, or because the factual findings are clearly erroneous in view of the reliable, probative, and substantial evidence. S.C.Code Ann. § 1-23-380(5) (Supp.2009). See Forrest v. A.S. Price Mech., 373 S.C. 303, 306, 644 S.E.2d 784, 785-86 (Ct.App. 2007).
When Pilgrim was injured on January 28, 2005, he had worked only 29.5 hours for Kern, all on the job for Eaton and Revis. He was paid for this time at the rate of $18 an hour. Other than this, neither party presented any direct evidence for the commission to use in calculating average weekly wage. The commission calculated Pilgrim's average weekly wage by multiplying $18 by a forty-hour week. We believe the commission's calculation of average weekly wage amounts to an error of law and resulted in an average weekly wage that is clearly erroneous. Because we find these errors have prejudiced substantial rights of the appellant, we reverse.
The Workers' Compensation Act defines average weekly wages precisely: "`Average weekly wages' means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury. . . ." S.C.Code Ann. § 42-1-40 (Supp.2009). The section sets forth four alternative methods for the commission to use to calculate the average wage. Forrest, 373 S.C. at 308, 644 S.E.2d at 786. The primary method of calculation requires that "`[a]verage weekly wage' must be calculated by taking the total wages paid for the last four quarters . . . divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less." S.C.Code Ann. § 42-1-40. The *45 commission must use this method unless "the employment, prior to the injury, extended over a period of less than fifty-two weeks," or unless "for exceptional reasons" it would be unfair to do so. Id.[5]
In this case, the record shows that Pilgrim had been working at the job for Kern for less than one week. Therefore, it was not permissible for the commission to use the primary method of calculating Pilgrim's average weekly wage. Under this circumstance, the commission is required to consider which of the alternative methods for calculating average weekly wage it will use. Each alternative is preceded by a description of the conditions under which the commission may use the alternative. Id. Before the commission may use any one of these alternatives, the commission must find, or the record must clearly show, that the necessary conditions exist.
The commission failed to comply with section 42-1-40 in two important respects. First, it failed to make any factual findings showing which of the alternatives in the section was appropriate to use for calculating Pilgrim's average weekly wage. Second, it used a method of calculation which is not permitted under any scenario.[6] The commission found:
At the time of the accident, Claimant was earning $18 an hour. . . . The amount yields an average weekly wage of $720.00 per week and a compensation rate of $480.24. Although he worked for only a short period of time, several days, it is reasonable to conclude that is the amount he would be earning were it not for the accident.
To illustrate that this calculation is an error of law, we consider each of the alternatives available under the section in light of the facts of this case. The first alternative to the primary method is to be used "[w]hen the employment . . . *46 extended over a period of less than fifty-two weeks. . . ." Id. In such a situation, the commission must use "the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages. . . ." Id. Section 42-1-40 states that "the method . . . shall be followed, as long as results fair and just to both parties will be obtained." Id. The section also contains a requirement that this particular method be "practicable." Id.[7]
Therefore, in order for the commission to use the first alternative to the primary method, two predicate conditions must exist. First, it must be "practicable" to use the first alternative method. Second, the calculation must yield a result which is "fair and just to both parties." Ordinarily, the commission should make factual findings of these two predicate conditions. In some situations, however, it may be clear from the record that both of the two predicate conditions exist. In this case, neither of them exists.
The "practicable" requirement is not met simply because 29.5 hours of wage data cannot yield a reasonably accurate calculation of an average that is designed to be based on a year of data. The "fair and just" requirement is not met for the same reason, and because Pilgrim's own testimony establishes that the commission's calculation is clearly erroneous. On cross-examination, Pilgrim testified that he earned $29 in 2005. Assuming the $29 was earned in a week separate from the week of his injury, in which he earned $531, his average weekly wage for January 2005 would have been $280.[8] Neither side offered any other direct evidence of previous or subsequent earnings. The circumstantial evidence that was offered would have reduced the calculation of Pilgrim's average weekly wage even lower. When asked how much he earned in 2004 and in 2003, Pilgrim responded "I don't know." *47 He also testified that since at least 1997 he filed no income tax returns and he paid no social security taxes.
Because the primary and first alternative methods of calculating average weekly wage were not available to the commission, it should have considered using the second alternative method.[9] This second alternative requires the commission to consider "the average weekly amount which . . . was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community." Id. Because neither of the parties mentioned the possibility of presenting such evidence, and the commission did not inquire of its availability, we cannot determine whether this would have been the appropriate way to calculate the average weekly wage.
The final alternative for calculating average weekly wage is to be employed when "exceptional reasons" exist that make it "unfair, either to the employer or the employee," to use the alternatives set forth above. Id. In that event, section 42-1-40 provides that "such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." Id. This alternative may be used by the commission when it makes factual findings that explain the "exceptional reasons" it finds the other methods are "unfair." Id. See Forrest, 373 S.C. at 308-11, 644 S.E.2d at 786-88 (affirming the commission's use of the "exceptional reasons" alternative based on specific findings which "justified deviation from the usual statutory method of . . . computation"). In this case, the commission did not make any findings to justify using the "exceptional reasons" alternative.
Appellants contend that this appeal should be resolved based on the burden of proof. Appellants argue that Pilgrim has the burden to prove average weekly wage, and thus compensation rate. They argue the lack of sufficient evidence *48 of wages should penalize Pilgrim. We believe, however, that the question of which side bears the burden of proof as to this specific issue is not properly before us. First, neither party raised the burden of proof to the commission; and the commission did not rule on it. Second, we need not reach the question of the burden of proof because our ruling already requires the commission to recalculate the average on remand. Third, it is not clear that there is a burden of proof on the issue of average weekly wage. We address the existence of a burden of proof on the question of average weekly wage. However, we do not answer the question.
Our courts have frequently stated that the burden of proof is on the claimant to prove facts which will bring the injury under the coverage of the Workers' Compensation Act. See, e.g., Clade v. Champion Labs., 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998); Bartley v. Allendale County Sch. Dist., 381 S.C. 262, 272, 672 S.E.2d 809, 814 (Ct.App.2009). These cases generally place the burden on a claimant to prove the injury is compensable. For example, in Clade, the supreme court placed the burden of proof on the claimant to prove her injury arose out of the scope and course of her employment. 330 S.C. at 11, 496 S.E.2d at 857. Similarly, our courts have held that the burden of proving causation is on the claimant. See Shealy v. Algernon Blair, Inc., 250 S.C. 106, 113, 156 S.E.2d 646, 649 (1967) ("The burden of proving causation rested upon claimant.").[10] However, the Act does not place the burden of proof on the claimant as to all issues. For example, S.C.Code Ann. § 42-9-60 (Supp.2009) specifically places the burden on the employer when asserting the defenses of intoxication or willful injury. On jurisdictional questions, our courts have stated the burden is on the claimant, and have made statements indicating the burden of proof as to jurisdictional facts may not be on the claimant.[11]Compare Marlow v. E.L. Jones & Son, Inc., 248 S.C. 568, 570, 151 S.E.2d 747, 748 (1966) ("[T]he burden of proving the relationship of employer and *49 employee is upon the claimants."); with Chavis v. Watkins, 256 S.C. 30, 34, 180 S.E.2d 648, 650 (1971) ("The burden rested upon the [employer] to show that a change in the identity of his employer was made known to [the employee].")[12] and Shuler v. Tri-County Elec. Co-op., Inc., 385 S.C. 470, 473, 684 S.E.2d 765, 767 (2009) ("It is South Carolina's policy to resolve jurisdictional doubts in favor of inclusion rather than exclusion."); Hill v. Eagle Motor Lines, 373 S.C. 422, 429, 645 S.E.2d 424, 427 (2007) ("In determining jurisdictional questions, doubts of jurisdiction will be resolved in favor of inclusion of employees within workers' compensation coverage rather than exclusion."). Therefore, the burden of proof may vary depending on the issue before the commission.
On the question of a burden of proof for the amount of compensation due for a compensable injury, the Workers' Compensation Act is silent, and our courts have hardly spoken. In one case, however, this court cited the regulations of the commission and stated "the claimant has the burden of proving wages earned from jobs other than the one where the accident occurred." Steele v. Self Serve, Inc., 335 S.C. 323, 327, 516 S.E.2d 674, 676 (Ct.App.1999). The reasoning of Steele, if applicable here, would actually place the burden of proving the average weekly wage from a single employer on the employer, not the claimant. Steele cited former regulation 67-1603(B),[13] which required a claimant to file a completed Form 20 for "each additional job" other than the one for whom the claimant was working at the moment of injury. 335 S.C. at 327, 516 S.E.2d at 676. From the requirement of filing a completed Form 20, this court imposed the burden of proof on the claimant as to that issue. Id. As to a single employer, however, the same regulation places the requirement of filing a Form 20 on the employer: "The employer's representative shall calculate the claimant's compensation rate by completing a Form 20, Statement of Earnings of Injured Employee." S.C.Code Ann. Regs. § 67-1603(A) (Supp.2009). The regulation *50 goes on to require that "[w]age information shall be provided by the employer." Id. § 67-1603(B). The regulation also addresses what the commission may do if the employer fails to file a proper Form 20. "Failure to file and/or serve the Form 20 as set forth above may result in . . . the commissioner. . . determining the average weekly wage and compensation rate from information in the Commission's file and statements or evidence presented at the hearing. . . ." Id. § 67-1603(G).[14] Thus, applying the reasoning of Steele, the burden of proof as to the average weekly wage would be on the employer.
The overriding goal of the Workers' Compensation Act "is to compensate workers for reductions in their earning power caused by work-related injuries. . . ." Stephenson v. Rice Servs., Inc., 323 S.C. 113, 116, 473 S.E.2d 699, 700 (1996). This statement from Stephenson was made in the context of explaining the "economic," or "earning impairment theory" of workers' compensation law in South Carolina. 323 S.C. at 116, 473 S.E.2d at 701. The starting point for determining compensation under this earning impairment theory is the commission's calculation of the average weekly wage under section 42-1-40. The specific goal of section 42-1-40 is for the commission to calculate an average weekly wage that is fair to both the worker and the employer. Applying an older version of the section, our supreme court stated "[t]he objective of wage calculation is to arrive at a fair approximation of the claimant's probable future earning capacity." Bennett v. Gary Smith Builders, 271 S.C. 94, 98, 245 S.E.2d 129, 131 (1978). Citing Bennett, this court has stated that section 42-1-40 "provides an elasticity or flexibility with a view toward always achieving the ultimate objective of reflecting fairly a claimant's probable future earning loss." Sellers v. Pinedale Residential Ctr., 350 S.C. 183, 191, 564 S.E.2d 694, 698 (Ct.App.2002). With these general objectives in mind, however, we note the Workers' Compensation Act sets forth a framework of statutory *51 requirements which must be specifically followed. We hold the commission's failure to correctly apply section 42-1-40 was an error of law that prejudiced substantial rights of Appellants. We reverse the calculation of average weekly wage and remand to the commission.
On remand, the commission must determine whether to allow the parties to present additional evidence, or to make the calculation based on the evidence already in the record. The commission must then comply with section 42-1-40 of the South Carolina Code. The commission must first determine which method to use in calculating Pilgrim's average weekly wage, and make factual findings on the existence of the conditions that warrant the use of the method chosen. The commission must then apply the method to the wage data before it. If the commission makes its decision on remand pursuant to regulation 67-1603, it must make that clear in its written decision.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
THOMAS and PIEPER, JJ., concur.
NOTES
[1] Kern is not a party to this claim. The commission found he was not subject to liability under the Workers' Compensation Act.
[2] The exclusivity provision of the Act is found in section 42-1-540 of the South Carolina Code (1985). The statutory employer liability of "contractors" such as Eaton and Revis is governed by section 42-1-410 (1985). When the commission determines that a "contractor" qualifies as a statutory employer pursuant to section 42-1-410, the exclusivity provision of section 42-1-540 applies to claims made against that contractor.
[3] The use of the term "owner" here refers only to Eaton's status as owner of Just Garages Plus, and not to his status as a statutory employer. Eaton is a statutory employer as a "contractor" under section 42-1-410. The statute relating to the statutory employer status of an "owner" is section 42-1-400 of the South Carolina Code (1985), and is not at issue in this appeal.
[4] Eaton testified that Revis was the only person to obtain permits for Just Garages Plus at the time of Pilgrim's injury. Revis was equivocal on the subject. We find his testimony is evasive and not credible. At one point Revis testified he did not obtain the permit. He later testified he did not know whether he did and that he would "have to go back . . . to the courthouse and find that out." He admitted the permit "shows [his] name printed by someone."
[5] The "exceptional reasons" alternative, which is discussed below, is based on the following paragraph from section 42-1-40:

When for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.
[6] It is conceivable that the method used by the commission could have been employed under the "exceptional reasons" alternative, but only if the commission made the requisite factual findings.
[7] This requirement is found in the provision that the third alternative method of calculation may not be used unless the first or second methods are "impracticable." Id.
[8] Making the calculation using only two work weeks results in the highest possible average. Total January earnings of $560 divided by two weeks yields an average of $280 per week. We use this calculation merely to illustrate the commission's error, not to suggest the outcome of the calculation the commission must make on remand.
[9] Section 42-1-40 provides this method is to be used "[w]here, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impracticable to compute the average weekly wages as defined in this section. . . ." Id.
[10] But see Tiller v. Nat'l. Health Care Ctr. of Sumter, 334 S.C. 333, 513 S.E.2d 843 (1999) (arguably calls the burden of proof on causation into question).
[11] We need not decide this question either, as our factual findings on the jurisdictional facts in this case would be the same regardless of who bears the burden.
[12] The Chavis court specifically stated the issue was jurisdictional. 256 S.C. at 32, 180 S.E.2d at 649.
[13] S.C.Code Ann. Regs. § 67-1603(B) (1990). The regulation was amended in 1997, and a modified version of the same requirement now is found at S.C.Code Ann. Regs. § 67-1603(H) (Supp.2009).
[14] The commission might have applied this regulation in making its decision as to Pilgrim's average weekly wage. However, the commission's written decision says nothing about doing so, or even about the regulation. The Record on Appeal does not contain a Form 20, and there no indication as to whether a Form 20 was filed by the employer. Neither party addressed a Form 20 or this regulation in their briefs.