726 S.E.2d 9

Gaines ADAMS, Respondent,

v.

H.R. ALLEN, INC., CNA, and Zurich
North America, Defendants,

Of whom H.R. Allen, Inc. and Zurich
North America are Appellants,

and

CNA is a Respondent.

No. 4967.

Court of Appeals of South Carolina.

Heard March 20, 2012.

Decided May 2, 2012.

James Paul Newman Jr., Weston Adams III, Helen F. Hiser, and Erroll Anne Y. Hodges, all of Columbia, for Appellants.

Alan Randolph Cochran, of Greenville; James P. Newman and Andrew E. Haselden, both of Columbia, for Respondents.

PER CURIAM.

Appellants, H.R. Allen, Inc. (Employer) and Zurich North America (Zurich), appeal from an order of the circuit court affirming the Workers' Compensation Commission's Appellate Panel's (Commission's) award of benefits to Respondent Gaines Adams.

Although Appellants raise six issues on appeal, the threshold issue of procedural due process is determinative. We hold procedural due process requires that the parties to a rehearing must be provided an opportunity to be heard and to confront and cross-examine witnesses. Accordingly, we vacate the circuit court's ruling and remand the case to the Commission to conduct a de novo hearing on the merits.

## FACTS/PROCEDURAL HISTORY

On March 15, 1999, Adams fell from a ladder, shattering a bone in his left heel.[1] Dr. Michael Tollison performed an

---

1. Any reference to a problem with Adams's right lower extremity is a scrivener's error; Adams sustained injuries to his left foot only.

ORIF—open reduction internal fixation. Adams returned to "light duty" on August 30, 1999. On December 17, 1999, Dr. Tollison determined Adams had reached maximum medical improvement (MMI) and discharged him with twenty-four percent impairment of the left foot. Dr. Tollison's progress note stated that in the future Adams "may require a subtalar joint fusion with tribal bone graft." Adams's work restrictions required him to avoid climbing ladders, walking on roofs, carrying heavy items, and working on scaffolds.[2]

Adams saw Dr. Tollison in 2001 for hypersensitivity in his left foot. Adams's condition improved; however, Dr. Tollison again noted that Adams likely would require subtalar joint fusion. Adams did not visit Dr. Tollison again until October 2006.

In July 2006, Employer assigned Adams to work part-time installing overhead lighting fixtures at a distribution center. On October 17, 2006, Adams returned to Dr. Tollison with increased pain and lack of mobility in his left ankle. Dr. Tollison diagnosed Adams as having left, post-traumatic hind foot arthritis; left, sural nerve neuralgia; traumatic arthropathy involving ankle and foot; and mononeuritis of the lower limb. Adams returned to work with additional permanent restrictions and a letter from Dr. Tollison that stated: "If employer has no work available according to these restrictions, it is up to the employer to release [Adams] from work." On October 26, 2006, Employer terminated Adams's employment, stating "no permanent light duty work [was] available."

On October 20, 2007, Adams filed a Form 50 contending he had sustained an accidental injury on October 26, 2006 due to "repetitive walking and standing on unlevel/hard surfaces." CNA denied that Adams's condition was caused by "a new accident"; asserted that compensability of any injury arising out of the March 1999 accident was barred; and stated CNA was not Employer's workers' compensation carrier on the date of Adams's alleged injury. Adams subsequently added Zurich, Employer's workers' compensation carrier from December 13, 2005 to December 13, 2006, as a defendant.

---

2. Respondent CNA was Employer's workers' compensation carrier, and this was an admitted accident.

The single commissioner conducted a hearing on May 7, 2008. Following the hearing, the commissioner left the record open for Dr. Tollison's deposition. On June 16, 2008, the single commissioner ruled that Adams had sustained "a compensable injury, whether it is considered repetitive trauma culminating in the last injurious exposure on October 26, 2006[,] or whether this is considered a[n] October 26, 2006 on-the-job accident." The commissioner dismissed CNA and found Zurich liable to Adams for benefits related to the October 26, 2006 injury, including fusion surgery and temporary, total disability benefits following surgery.

After Zurich requested review of the single commissioner's decision, it became evident that the reporter's equipment had malfunctioned and portions of the hearing were inaudible. Adams asked the Commission to remand the case to the single commissioner "to retake such testimony as may be necessary to replicate the record." Thereafter, the Commission ordered: "[T]his matter is remanded to Commissioner Williams for rehearing."

The single commissioner conducted the rehearing on January 15, 2009. Each of the participants, with the exception of Adams, was given a copy of the original transcript. Shortly after Adams began testifying, Zurich's counsel repeatedly objected to testimony that it alleged was "outside the scope" of the original transcript. When CNA objected to Zurich's attempt to follow up on Adams's answer, Zurich explained: "But his answer wasn't the same as it was in the original."

Zurich asked the single commissioner for permission to question Adams's supervisor about a description of the working conditions that had been posed to Dr. Tollison during his deposition. The commissioner denied Zurich's request, stating:

**The Single Commissioner:** I'll deny that, obviously. I already issued a ruling in this case based on the evidence. And I heard the evidence at the last case, so I didn't need a transcript to make any ruling. So, I'm going to deny that motion right now.

**Zurich:** If we could just place that on the record, that we would like to have them address the hypothetical that the Claimant's own attorney gave after the hearing so we

couldn't address it at the [first] hearing because he didn't give it until afterward.

**The Single Commissioner:** I'm going to deny that, obviously, because my ruling wasn't based on any of that. You can move on.

Following the rehearing, the single commissioner reissued the prior order. Zurich filed an application for review alleging numerous errors, including a contention that significant irregularities had occurred during the rehearing. On June 26, 2009, the Commission unanimously adopted the single commissioner's order; thereafter, the circuit court conducted a hearing and affirmed the Commission's order in its entirety. This appeal followed.

## ISSUE ON APPEAL

Did the Circuit Court err in upholding the hybrid manner in which the single commissioner conducted the rehearing?

## LAW/ANALYSIS

■ Appellants contend they "were forced to repeat the question portion of the original hearing, but the witnesses were allowed to answer in any way they saw fit, often providing new testimony." Appellants argue that while Adams was allowed to answer questions freely, they were not allowed to ask "routine follow-up questions in response to new testimony." They assert this "hybrid manner" of conducting the rehearing was "at worst a violation of Appellant's due process rights and at best, highly unfair."

Adams contends that the trial court has discretion to adopt "the most effective method of reconstruction" of a transcript. He additionally contends, "Appellant[s] suffered no consequential prejudice."

■ Where portions of stenographic notes are lost prior to transcription, it is appropriate for the judge to accept affidavits of counsel and the court reporter to determine what transpired. *China v. Parrott,* 251 S.C. 329, 333–34, 162 S.E.2d 276, 278 (1968). However, the reconstructed record must allow for meaningful appellate review. *State v. Ladson,* 373 S.C. 320, 321, 644 S.E.2d 271, 271 (Ct.App.2007). "A new trial

is therefore appropriate if the appellant establishes that the incomplete nature of the transcript prevents the appellate court from conducting a meaningful appellate review." *Id.* at 325, 644 S.E.2d at 274 (citations and internal quotation marks omitted).

The South Carolina Constitution provides that in procedures before administrative agencies: "No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard...." Art. I, § 22 (2009 & Supp. 2011). The South Carolina Supreme Court has explained:

"Procedural due process requirements are not technical; no particular form of procedure is necessary. The United States Supreme Court has held, however, that at a minimum certain elements must be present. These include (1) adequate notice; (2) adequate opportunity for a hearing; (3) the right to introduce evidence; and (4) the right to confront and cross-examine witnesses."

*In re Dickey*, 395 S.C. 336, 360, 718 S.E.2d 739, 751 (2011) (quoting *In re Vora*, 354 S.C. 590, 595, 582 S.E.2d 413, 416 (2003)).

The Administrative Procedures Act (APA) requires that, in a contested case, all parties must be afforded the opportunity for a hearing. S.C.Code Ann. § 1–23–320(A) (2005 & Supp. 2011). The APA additionally requires: "Opportunity must be afforded all parties to respond and present evidence and argument on all issues involved." S.C.Code Ann. § 1–23–320(E) (2005 & Supp.2011). Moreover, the APA provides that, in a contested case, "[a]ny party may conduct cross-examination." S.C.Code Ann. § 1–23–330(3) (2005).

In *State v. Mouzon*, the South Carolina Supreme Court distinguished between "trial errors, which are subject to harmless error analysis," and "structural defects in the constitution of the trial mechanism, which defy analysis by harmless error standards." 326 S.C. 199, 204, 485 S.E.2d 918, 921 (1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). In *LaSalle Bank Nat'l Ass'n v. Davidson*, the court held that the failure of a judge to attend a mortgage foreclosure proceeding was a structural defect that violated the Appellants' "constitutional guarantee to procedur-

al due process." 386 S.C. 276, 277, 688 S.E.2d 121, 121 (2009). There, the court ordered a new trial, stating: "The purported hearing was a nullity, and the resulting order must be vacated. The judge's absence from the hearing deprived the [Appellants] of the opportunity to be heard and, thus violated their constitutional guarantee of procedural due process." *Id.* at 281, 688 S.E.2d at 123; *see also U.S. v. Marcus,* —— U.S. ——, 130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010) (stating that "certain errors, termed 'structural errors,' might 'affect substantial rights' regardless of their actual impact on an appellant's trial").

In this case, a comparison of the two transcripts supports Appellants' allegation that the rehearing allowed Adams an opportunity to "amplify" the responses he provided at the first hearing, while Appellants were not provided the opportunity to cross-examine Adams on new responses. We are concerned by the single commissioner's decision to provide all participants—except Adams—with a copy of the original transcript. In our view, the commissioner was required to treat all witnesses similarly. Had Adams been provided a copy of the original transcript, he—like the other witnesses—would have been in a position to read his transcribed responses and to complete the inaudible portions of the original testimony. Instead, Adams was provided the unique opportunity to "freely respond," while Appellants were not allowed to freely cross-examine him.

We agree with Appellants' contention that "the preferable options would have been to have reconstructed only the incomplete portions of the original transcript or to have remanded for an entirely new hearing." While we agree the trial court has discretion in determining how to reconstruct missing portions of a transcript, this discretion must lie within the limits required by procedural due process. Here, although the Commission ordered a rehearing, the single commissioner conducted the subsequent hearing in a hybrid manner that was neither a true rehearing of the matter on the merits nor a straight-forward reconstruction of the original transcript. Such a hybrid approach to rehearing constitutes a structural defect that cannot be reviewed under the harmless error standard. While we are mindful of the importance of judicial

efficiency, we find the hybrid rehearing procedure in this case violated Appellants' right to procedural due process.[3]

## CONCLUSION

Based on the foregoing, we vacate the circuit court's order and remand the case to the Commission to conduct a de novo hearing on the merits.

**VACATED AND REMANDED.**

PIEPER, KONDUROS, and GEATHERS, JJ., concur.

---

[3]. We decline to address Appellant's remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).