# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Henton T. Clemmons, Jr., Employee, Petitioner,

v.

Lowe's Home Centers, Inc.-Harbison, Employer, and Sedgwick Claims Management Services, Inc., Carrier, Respondents.

Appellate Case No. 2015-001350

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from the Workers' Compensation Commission

---

Opinion No. 27708
Heard September 21, 2016 – Filed March 8, 2017

---

### REVERSED

---

Preston F. McDaniel, of McDaniel Law Firm, of Columbia, for Petitioner.

Helen F. Hiser, of Mount Pleasant, and Kelly F. Morrow, of Columbia, of McAngus Goudelock & Courie, for Respondents.

---

**JUSTICE HEARN:** In this case we must determine whether a claimant's ability to work can affect his entitlement to disability benefits under the scheduled-

member statute of the South Carolina Workers' Compensation Act (the Act). Petitioner Henton T. Clemmons, Jr. injured his back and neck while working at Lowe's Home Center in Columbia. Although all the medical evidence indicated Clemmons had lost more than fifty percent of the use of his back, the Workers' Compensation Commission awarded him only permanent partial disability. The court of appeals affirmed. *Clemmons v. Lowe's Home Ctrs, Inc.-Harbison*, 412 S.C. 366, 772 S.E.2d 517 (Ct. App. 2015). We now reverse and hold evidence of a claimant's ability to hold gainful employment alone cannot preclude a determination of permanent disability under the scheduled-member statute.

## FACTUAL/PROCEDURAL BACKGROUND

In September 2010, Clemmons was assisting a customer at Lowe's when he slipped and fell, severely injuring his back. Clemmons visited neurological specialist, Dr. Randall Drye, and was diagnosed with a herniated disc which caused severe spinal cord compression and necessitated immediate surgery. Dr. Drye removed Clemmons' herniated disc and fused his C5 and C7 vertebrae by screwing a rod into his spine. After surgery, Clemmons underwent extensive inpatient and outpatient physical rehabilitation; however, he continued to experience pain in his neck and back, as well as difficulty balancing and walking.

Clemmons filed a workers' compensation claim to recover medical expenses and temporary total disability benefits. Lowe's admitted Clemmons had suffered an accepted, compensable injury in the course of his employment and agreed to pay temporary total disability benefits until Clemmons reached maximum medical improvement (MMI) or returned to work.

In June 2011, Dr. Drye determined Clemmons had reached MMI and, per the *AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition* (*AMA Guides*), assigned Clemmons a whole-person impairment rating of twenty-five percent based on his cervical spine injury, which converts to a seventy-one percent regional impairment to his spine. Dr. Drye also determined Clemmons could return to work at Lowe's subject to certain permanent restrictions.[1] A few months later, Lowe's agreed to accommodate Clemmons' restrictions and permitted him to return as a cashier.

---

[1] Clemmons' work restrictions prohibit him from standing or walking for more than an hour at a time, stair-climbing, repetitively reaching overhead, and lifting more than thirty pounds.

In June 2012, Dr. Drye conducted a follow-up evaluation and reached the same conclusion he had a year earlier—that Clemmons had reached MMI and required the same permanent work restrictions. Thereafter, Lowe's requested a hearing before the Commission to determine whether Clemmons was owed any permanent disability benefits.

Prior to the hearing, Clemmons visited a number of medical professionals for additional opinions regarding his condition. Physical therapist Tracy Hill evaluated Clemmons and, pursuant to the *AMA Guides*, assigned him a thirty-six percent whole-person impairment rating and a ninety-one percent regional impairment rating with respect to his back. Dr. Leonard Forrest of the Southeastern Spine Institute also evaluated Clemmons and assigned him a whole-person impairment rating of forty percent, which translates to a ninety-nine percent regional impairment to his back. In addition to the *AMA Guides* impairment ratings, Clemmons presented medical testimony from general practitioner Dr. Gal Margalit, who opined to a reasonable degree of medical certainty that Clemmons had lost more than fifty percent of the functional capacity of his back.

At the hearing, based on the consensus among all the medical experts who examined him, Clemmons argued he was entitled to permanent total disability based on his loss of more than fifty percent of the use of his back. Lowe's, on the other hand, argued Dr. Drye's twenty-five percent whole-person rating and Clemmons' return to work indicated Clemmons had not lost more than fifty percent of the use of his back, and thus Clemmons was only entitled to permanent partial disability.

The Single Commissioner determined Clemmons was not permanently and totally disabled, finding Clemmons sustained only a forty-eight percent injury to his back and was thereby limited to an award of permanent partial disability. The full Commission adopted and affirmed the Commissioner's order in its entirety. The court of appeals also affirmed, holding the Commission's findings of fact were supported by substantial evidence. We issued a writ of certiorari to review the court of appeals' decision.

## ISSUES PRESENTED

I. Did the court of appeals properly apply the substantial evidence standard to the evidence in this case when affirming the Commission's findings?

II. Did the court of appeals improperly infuse wage loss into and as a

consideration for an award made under the scheduled-member statute?[2]

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act governs judicial review of decisions by the Workers' Compensation Commission. S.C. Code Ann. § 1-23-380 (Supp. 2015). An appellate court's review is limited to the determination of whether the Commission's decision is supported by substantial evidence or is controlled by an error of law. *Grant v. Grant Textiles*, 372 S.C. 196, 201, 641 S.E.2d 869, 871 (2007).

The Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact; however, the Court may reverse or modify a decision of the Commission if it is affected by an error of law or is clearly erroneous in view of the substantial evidence on the record as a whole. S.C. Code Ann. § 1-23-380(5). While the findings of an administrative agency are presumed correct, they may be set aside if they are unsupported by substantial evidence. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 519, 466 S.E.2d 357, 359 (1996) (citing *Kearse v. State Health & Hum. Servs. Fin. Comm'n*, 318 S.C. 198, 200, 456 S.E.2d 892, 893 (1995)). "'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Adams v. Texfi Indus.*, 341 S.C. 401, 404, 535 S.E.2d 124, 125 (2000) (quoting *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981)).

## LAW/ANALYSIS

Clemmons argues the court of appeals erred in finding the Commission's order was supported by substantial evidence. Specifically, Clemmons contends *all* the medical evidence in the record shows he suffered more than a fifty percent loss of use to his back, thus entitling him to an award of permanent *total*, rather than *partial*, disability. We agree.

In pertinent part, the scheduled-member statute reads:

---

[2] Based on our resolution of the first question it is not necessary for us to reach the merits of this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address additional issues when the disposition of the first issue is dispositive).

> In cases included in the following schedule, the disability in each case is considered to continue for the period specified and the compensation paid for the injury is as specified: . . .
>
> (21) . . . [I]n cases *where there is fifty percent or more loss of use of the back the injured employee shall be presumed to have suffered total and permanent disability* and compensated under Section 42-9-10(B). The presumption set forth in this item is rebuttable[.]

S.C. Code Ann. § 42-9-30 (2015).

Although a claimant's degree of impairment is usually a question of fact for the Commission, if all the evidence points to one conclusion or the Commission's findings "are based on surmise, speculation or conjecture, then the issue becomes one of law for the court . . . ." *Polk v. E.I. duPont de Nemours Co.*, 250 S.C. 468, 475, 158 S.E.2d 765, 768 (1968) (citing *Hines v. Pacific Mills*, 214 S.C. 125, 131, 51 S.E.2d 383, 385 (1949)); *see also Randolph v. Fiske-Carter Constr. Co.*, 240 S.C. 182, 189, 125 S.E.2d 267, 270 (1962) (holding where there is absolutely no evidence to support the Commission's findings, the question becomes a question of law).

We find the Commission's conclusion with respect to loss of use is unsupported by the substantial evidence in the record. Specifically, there is *no* evidence in the record that Clemmons suffered anything less than a fifty percent impairment to his back. Every doctor and medical professional who assigned an *AMA Guides* impairment rating indicated Clemmons lost more than seventy percent of the use of his back, including Dr. Drye, whom the Commission particularly relied on in making its findings. Indeed, there is nothing in the record to support the Commission's finding of a forty-eight percent impairment rating.

While there is medical evidence that Clemmons' whole person was impaired less than fifty percent, the issue under the scheduled-member statute is not impairment as to the whole body, but rather it is the loss of use of a specific body part—in this case, Clemmons' back. All the medical evidence in the record points to only one conclusion: Clemmons has suffered an impairment to his back greater than fifty percent. Therefore, we hold Clemmons has lost more than fifty percent of the use of his back and is presumptively permanently and totally disabled.

We further hold that based on the record before us, the presumption of permanent and total disability has not been rebutted. While this Court has indicated a claimant's return to work is not probative to an analysis under the

scheduled-member statute, we have not squarely addressed whether return to employment may be considered to rebut the presumption of permanent and total disability.  S*ee Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 109, 580 S.E.2d 100, 104 (2003) ("In the context of scheduled injuries, South Carolina recognizes a claimant's entitlement to be deemed disabled and to receive compensation for an injury even though the claimant is able to work."); *Stephenson*, 323 S.C. at 118 n.1, 473 S.E.2d at 701 n.1 (recognizing that "even after being adjudged totally disabled, many employees receiving benefits under one of the specific statutory presumptions of total disability continue to work either in the same or in a different field.  *An employer may not refuse to pay the total disability benefits simply because the employee retains earning capacity after the accident*." (emphasis added)).  Nevertheless, in *Watson v. Xtra Mile Driver Training, Inc.*, the court of appeals held evidence of a claimant's mere ability to return to work within her restrictions was *alone* sufficient to rebut the presumption of total permanent disability under section 42-9-30(21).  399 S.C. 455, 464–65, 732 S.E.2d 190, 195 (Ct. App. 2012).  Today, we hold the mere fact a claimant continues to work is insufficient to defeat the presumption of permanent and total disability for loss of use of the back.

The cardinal rule of statutory construction is "the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute."  *Allen v. S.C. Pub. Emp. Benefit Auth.*, 411 S.C. 611, 616, 769 S.E.2d 666, 669 (2015) (internal quotations omitted).  Each statute must be given its full force and effect, and the words must be given their plain, ordinary meaning.  *In re Hosp. Pricing Litig., King v. AnMed Health*, 377 S.C. 48, 59, 659 S.E.2d 131, 137 (2008); *Sloan v. Hardee*, 371 S.C. 495, 499, 640 S.E.2d 457, 459 (2007).  "'A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers.'"  *I'On, LLC v. Town of Mt. Pleasant*, 338 S.C. 406, 412, 526 S.E.2d 716, 719 (2000) (quoting *State v. Baker*, 310 S.C. 510, 512, 427 S.E.2d 670, 672 (1993)).

Under the Act, there are two competing models of workers' compensation.  *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 104, 580 S.E.2d 100, 102 (2003).  The economic model defines a claimant's disability and incapacity in terms of his loss of earning capacity resulting from the injury, while the medical model bases awards for disability upon the degree of medical impairment to specified body parts.  *Id.* (citing *Stephenson*, 323 S.C. 113, 116–17, 473 S.E.2d 699, 700–01).  The Act provides two methods of obtaining total disability compensation: (1) total disability under the general disability statute; and (2) scheduled disability under the

scheduled-member statute. S.C. Code Ann. §§ 42-9-10 and -30 (2015). While the general disability statute is premised on the economic model, the scheduled-member statute clearly relies upon the medical model, incorporating a presumption of lost earning capacity. *Wigfall*, 354 S.C. at 105, 580 S.E.2d at 102; *see also Fields v. Owens Corning Fiberglas*, 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990) ("It is well-settled that an award under [section 42-9-10] must be predicated upon a showing of a loss of earning capacity, whereas an award under the scheduled loss statute does not require such a showing."). We emphasize that under the medical model the claimant is being compensated, not only for any lost wages, but for the impact that loss of use of a body part has on the claimant's life. *See Jewell v. R.B. Pond Co.*, 198 S.C. 86, 15 S.E.2d 684, 686 (1941) (noting the Act is meant to indemnify claimants for injuries which the legislature has specifically identified in the scheduled member statute).

To allow a claimant's ability to work alone to rebut the presumption of total and permanent disability undermines the established principle that the scheduled-member statute is separate and distinct from the general disability statute. *See Wigfall*, 354 S.C. at 105, 580 S.E.2d at 102 (explaining section 42-9-10 is "premised on the economic model, in most instances, while [section 42-9-30] conclusively relies upon the medical model with its presumption of lost earning capacity"). Separating wage loss from the analysis in establishing the presumption, only to allow earning capacity to come in after the fact and conclusively rebut it, renders the presumption meaningless.

As a policy matter, to allow a claimant's ability to work to rebut the presumption of total and permanent disability would have the undesirable effect of discouraging claimants from returning to the workforce. Moreover, we note it is a misnomer to say Clemmons fully "returned to work" in this case. While it is true he returned to the same job as a cashier, his duties were significantly reduced in light of his condition. We believe a claimant wanting to work and being willing to accept a less demanding position in order to do so is something to be commended, rather than to be used to deny him benefits. Therefore, we hold evidence of subsequent employment is insufficient by itself to rebut the presumption of permanent and total disability under section 42-9-30(21), and the holding in *Watson* is overruled.

Aside from Clemmons' return to work, the only other relevant evidence Lowe's presented was Dr. Drye's reports which, as previously discussed, indicated Clemmons suffered a seventy-one percent loss of use of his back. Thus, Lowe's failed to provide any evidence Clemmons lost less than fifty percent of his back,

and the presumption that Clemmons is permanently and totally disabled due to a loss of more than fifty percent of the use of his back prevails. Therefore, Clemmons is entitled to permanent total disability benefits under section 42-9-30(21).

## CONCLUSION

For the foregoing reasons, we conclude the Commission's findings were not supported by substantial evidence and we reverse the court of appeals. We hold Clemmons is entitled to permanent total disability and remand to the Commission for entry of an award of under section 42-9-30(21).[3]

**BEATTY, C.J., and Acting Justice James E. Moore, concur. Kittredge, J., concurring in result only. Acting Justice Costa M. Pleicones, concurring in part and dissenting in part in a separate opinion.**

---

[3] The dissent posits that, upon remand, Respondents should have an opportunity to rebut the presumption of Clemmons' total and permanent disability. We disagree. At the hearing below, both parties had the opportunity to present evidence on the issue of whether Clemmons was entitled to the presumption of total and permanent disability because he lost more than fifty percent use of his back and, if so, whether the presumption had been rebutted. It would be inequitable and contrary to our precedent to afford Respondents a second opportunity to litigate this issue. *See, e.g.*, *Parker v. S.C. Pub. Serv. Comm'n*, 288 S.C. 304, 307, 342 S.E.2d 403, 405 (1986) (holding an administrative agency may not consider additional evidence upon remand unless this Court explicitly allows it because to do so affords the parties a second bite at the apple).

**ACTING JUSTICE PLEICONES**:  I concur in part and dissent in part, and would reverse and remand.

I write separately to emphasize that in this case the only evidence of impairment was offered by experts, and therefore the majority rightfully focuses on that type of evidence in determining whether petitioner met his burden of proof.  I caution against a reading of the majority opinion, however, as holding that in every case only expert testimony is relevant to the loss of use determination under the scheduled member section. *See, e.g., Tiller v. Nat'l Health Center of Sumter*, 334 S.C. 333, 513 S. E.2d 843 (1999) (expert evidence not conclusive on issue of fact where other evidence exists).   I agree with the majority that the Court of Appeals erred in affirming the Commission's finding that petitioner had failed to prove he suffered at least a fifty percent loss of use of his back.

I dissent, however, from the majority's decision to remand this matter without affording the respondents the opportunity to rebut the statutory presumption that this loss of use of the back has resulted in petitioner's total and permanent disability.  S. C. Code Ann. § 42-9-30(21) (2015); *Watson v. Xtra Mile Driver Training, Inc.*, 399 S.C. 455, 732 S.E.2d 190 (Ct. App. 2012).  It is axiomatic that, as the majority explains, that there are two different compensation models in workers compensation.  The novel issue before the Court at this juncture is what evidence is relevant to rebut the presumption of total and permanent disability when there is a finding of loss of 50 per cent or more use of the back under the scheduled member statute.  The back is the only scheduled member where the disability presumption is "rebuttable," a statutory change made in 2007.[4] *See* 2007 Act No. 111, Pt. 1, § 18.   I disagree with the majority that by holding that evidence of "gainful employment" is insufficient, and by refusing to identify what type of evidence would be germane, we may deny the respondents the opportunity on

---

[4] I note that both *Wigfall v. Tidelands Utils., Inc.*, 354 S.C. 100, 580 S.E.2d 100 (2003) and *Stephenson v. Rice Services, Inc.*, 323 S.C. 113, 473 S.E.2d 699 (1996) were decided before the rebuttable presumption was added, while *Watson* was decided under the current version of the statute. For this reason, unlike the majority, I find *Wigfall's* statement that a claimant who is disabled under the scheduled member statute is entitled to compensation even if able to work, and *Stephenson's* statement that "An employer may not refuse to pay the total disability benefits simply because the employee retains earning capacity," to be unhelpful in resolving the issue of the type of evidence that rebuts the total disability presumption now found in § 43-9-30(21).

remand to present rebuttal evidence.[5]  Moreover, as explained below, I conclude that evidence the injured person has not suffered wage loss is the relevant rebuttal evidence.

 "Disability" is defined for purposes of Workers' Compensation as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."  S.C. Code Ann. § 42-1-120 (2015).  In my opinion, given this statutory definition, the appropriate evidence by which an employer may rebut the presumption of "total disability" is by showing that the employee retains earning capacity, either total or partial. As noted above, the majority does not explain what evidence would be relevant to rebut the statutory presumption created by § 42-9-30(21) and instead argues it would be undesirable from a policy standpoint to allow evidence of earning capacity to rebut it.  Whatever the desirability from a policy standpoint of allowing earning capacity to rebut the presumption, I read the Act as a whole as mandating that this type of evidence is dispositive.  *E.g., Brittingham v. Williams Sign Erectors, Inc.*, 299 S.C. 259, 263, 384 S.E.2d 319, 321 (Ct. App. 1989) ("All sections of the Workers' Compensation Act must be read together to determine legislative intent").

For the reasons given above, I would reverse the decision of the Court of Appeals and remand for further proceedings.

---

[5] The majority asserts that affording respondents the opportunity to rebut the presumption on remand would be "inequitable" and wrongfully allow them "a second opportunity to litigate this issue."  In my opinion, fundamental fairness requires that they be afforded this right.  When this case was before the Commission, *Watson* was the controlling precedent, and therefore respondents' evidence that petitioner had returned to work was, in the words of the majority, "*alone* sufficient to rebut the presumption of total permanent disability under section 42-9-30(21)."  Now that the majority has overruled  this holding, and announced that such evidence is now "insufficient to defeat the presumption of permanent and total disability for loss of use of the back," respondents are entitled to know what other type of evidence the majority deems relevant to a rebuttal, and the opportunity to present that additional evidence on remand.